**AKIN GUMP STRAUSS HAUER & FELD LLP**

PAUL D. TRIPODI II (SBN 162380)
ptripodi@akingump.com
4 Park Plaza, Suite 1900
Irvine, CA 92614
Tel: 949-885-4100
Fax: 949-885-4101

DAVID C. VONDLE (CA SBN 221311)
dvondle@akingump.com
Robert S. Strauss Tower
2001 K Street N.W.
Washington, DC 20006
Tel: 202-887-4000
Fax: 202-887-4288

Attorneys for Plaintiff Business Efficiency
Solutions, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUSINESS EFFICIENCY SOLUTIONS, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>HUAWEI TECHNOLOGIES CO. LTD, a China company, and HUAWEI TECHNOLOGIES (PAKISTAN) PRIVATE LIMITED, a Pakistan company,<br><br>                    Defendants. | Case No. 8:21-cv-1330<br><br>**COMPLAINT FOR VIOLATIONS OF (1) DEFEND TRADE SECRETS ACT; (2) CALIFORNIA UNIFORM TRADE SECRETS ACT; AND (3) CAL. BUS. & PROF. CODE § 17200 ET. SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Business Efficiency Solutions, LLC ("BES") brings this action against Defendants Huawei Technologies Co. LTD ("Huawei-China") and Huawei Technologies (Pakistan) Private Limited ("Huawei-Pakistan") (collectively, "Huawei") for theft and misappropriation of trade secrets under both 18 U.S.C. § 1836, the Defend Trade Secrets Act ("DTSA") and California Civil Code § 3426, the California Uniform Trade Secrets Act ("CUTSA"), and for unfair competition under California Business and Professions Code § 17200 et seq.

## INTRODUCTION

1.     In 2015, the government of Pakistan launched a program designed to completely overhaul existing police and law enforcement agencies with new, innovative technology to make the cities of Pakistan safer.  The Pakistani government invited highly technical proposals from Huawei and other technology companies around the world for the inaugural "Safe City" project in Lahore, Pakistan.

2.     At the time, Huawei lacked the capability to undertake such a technically advanced project on its own, and it lacked the ability to develop the required controls and customized software in-house or in time to submit a bid for the work to the Pakistani government.

3.     BES and its engineers, however, had the capability, expertise, and knowledge that Huawei lacked to meet the technical and software requirements for the Safe City project in Lahore.  Huawei aggressively sought to partner with BES to assist in the preparation and submission of its bid for the project.  BES agreed to partner with Huawei and provided its technical expertise for the proposal.  Huawei then submitted a bid valued at $150 million for the Lahore project with Huawei as the general contractor and BES as the exclusive subcontractor.  Based on BES's prowess in advanced software systems, Pakistan awarded the project to Huawei, and Huawei exclusively subcontracted the advanced technical work to BES.

4.     After Huawei's successful bid for the Lahore Project, Huawei gained possession of BES's most commercially valuable trade secrets and other confidential

information.  Specifically, Huawei obtained BES's complete software systems, including BES's proprietary, trade secret "low-level designs" ("LLDs").  Meanwhile, Huawei began to contest its obligations to pay BES for the Lahore project and disputed its obligations to BES in connection with additional Safe City projects under the contract.

5.     After Huawei had BES's valuable trade secrets and other intellectual property in its possession, Huawei used its knowledge of BES's technology to begin secretly procuring certain portions of BES's software systems from other sources – including from vendors BES identified to Huawei.

6.     Huawei also began to use one of BES's software systems to establish a "backdoor" from China into Pakistan that allowed Huawei to collect and view data important to Pakistan's national security and other private, personal data on Pakistani citizens.

7.     After obtaining possession and access to BES's trade secrets under the guise of contract, beginning in the fall of 2018, Huawei pursued contracts to develop other Safe City projects in Pakistan and around the world on its own – in violation of its agreement with BES and the limited license to BES's technology provided therein.

8.     BES is not Huawei's first victim of intellectual property theft.  According to the United States Department of Justice, Huawei has stolen source code, software, and confidential trade secrets from numerous other companies, including major technology companies in the United States.  *See*, *e.g.*, https://www.justice.gov/opa/pr/chinese-telecommunications-conglomerate-huawei-and-subsidiaries-charged-racketeering; *see also* https://www.justice.gov/opa/pr/chinese-telecommunications-device-manufacturer-and-its-us-affiliate-indicted-theft-trade (both visited August 11, 2021).

9.     BES has suffered injury from Huawei's theft and unauthorized use of its unique, proprietary and cutting-edge technology.  BES seeks damages for the injury it has suffered and seeks to enjoin Huawei from further unlawfully and unjustly gaining

from Huawei's theft of BES's trade secrets and other intellectual property, including BES's LLDs.

## THE PARTIES

10. Plaintiff Business Efficiency Solutions, LLC ("BES") is a Delaware limited liability corporation with its principal place of business in Buena Park, California.

11. Defendant Huawei Technologies Co. LTD ("Huawei-China") is a foreign company with its principal place of business at Bantian, Longgang District, Shenzhen, People's Republic of China.

12. Defendant Huawei Technologies (Pakistan) Private Limited ("Huawei-Pakistan") is a foreign company with its principal place of business at 12th Floor, Saudi Pak Tower, Jinnah Avenue, Blue Area, Islamabad, Pakistan.

13. On information and belief, each of Huawei-China and Huawei-Pakistan was the agent, servant and employee, co-venturer, alter ego, and co-conspirator of the other at all relevant times, and was at all times herein mentioned, acting within the course, scope, and purpose of such agency, employment, joint venture, and conspiracy, and with the consent, knowledge, ratification, and authorization of such agency, employment, joint venture, and conspiracy.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because Huawei-China and Huawei-Pakistan are each citizens or subjects of foreign states, and BES is a Delaware limited liability corporation with its principal place of business in Buena Park, California. The amount in controversy exceeds $75,000.

15. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred, and a substantial part of the property that is the subject of this action is situated, in California.

//

//

//

## BACKGROUND AND GENERAL ALLEGATIONS

### Huawei Partners with BES to Win $150 Million Bid for the Lahore Project

16.     In July of 2015, the Punjab Safe Cities Authority ("PSCA") of the Government of Punjab was established to improve public safety and security in the province of Punjab, Pakistan.  In Punjab Safe Cities Ordinance 2015, the PSCA outlined a vision to overhaul and modernize the existing police systems using cutting-edge, innovative technology.  The Punjab Police Integrated Command, Control and Communication Center ("PPIC3") of Lahore, Punjab was selected as the first project (the "Lahore Project") of the PSCA.  The PSCA prepared a Request for Proposal ("RFP") that included rigorous and mandatory technical requirements, specifications and milestones for the various systems required under the project.  The PSCA invited responses to its RFP from a number of international firms, including Huawei, Motorola, and Nokia, among others.

17.     At the time, however, Huawei did not have the technical capability to deliver the systems required under the RFP, to respond to the RFP with adequate technical specificity, or to develop the required control systems and customized software internally in the necessary time specified in the RFP.  BES, however, did have the technical capability and expertise requested in the RFP, and Huawei sought to partner with BES for that capability.

18.     In March 2016, Huawei and BES entered into an exclusive subcontractor agreement whereby BES would develop eight software systems and applications called for by the RFP, specifically:

**1) Data Exchange System ("DES"):** This system collects vital data from numerous agencies in Pakistan such as the National ID Card Agency (the "NADRA"), Excise and Customs, Cellular Companies, Land Records, Tax Records, Immigration/Passport Authority and others.  The collected data is stored in a data warehouse and made available through custom-designed interfaces for investigative use and real-time analysis by law enforcement agencies.

**2) Building Management System ("BMS"):** This system manages security and controls access to buildings and sensitive areas within buildings.  It also monitors building assets such as elevators, air-conditioning, heating, lights, emergency power systems, fire control systems, and other facility-management related assets.

**3) Resource Management System ("RMS"):** This system manages the deployed resources at a law enforcement agency, including police force, weapons, automobiles, motorcycles, canine resources, mounted police, specialized vehicles and devices, cameras and sensors in the field, and all other resources used or deployed for monitoring, surveillance, and prompt and effective emergency response.

**4) Digital Media Forensic Center ("DFC"):** This system assists in the enhancement of captured video and still images by cameras installed across the network.  It is used in crime investigations, analysis, and case incidence or evidence.

**5) Learning Management System ("LMS"):** This system improves overall workforce capabilities and capacity.  It tracks delivery of appropriate training, and monitors the effectiveness of all training activities.  It is vital for capacity building and workforce readiness of the police and support force.

**6) Media Monitoring Center ("MMC"):** This system monitors social media (*e.g.*, Facebook, Twitter, blogs, etc.) as well as print and broadcast media for law enforcement purposes.

**7) Field Assets, including Mobile Emergency Command and Control Vehicles ("ECV")**:  This system includes various field assets, such as Mobile Emergency Command and Control Vehicles**,** specialized rugged hand-held tablet computers, body-wearable cameras, and covert miniaturized cameras, among other assets.

**8) Unmanned Aerial Vehicles ("UAV"):** This system manages industrial-strength drones deployed to perform monitoring services from

the air.  The drones are equipped with video cameras for real-time broadcast to a control room. Thermal cameras for nighttime surveillance and other sensors for gas leak detection are required features of the UAVs.

19.     BES spent considerable time and resources preparing highly technical and substantive responses to the RFP.  Because of BES's contribution to the RFP response, the PSCA awarded Huawei's proposal for the Lahore Project with a bid of $150 million.

<u>Huawei Demands BES Provide Proprietary Low-Level Designs</u>

20.     After the award of the Lahore Project, engineers at BES designed and custom built, from the ground up, each of the eight systems described in detail in the Subcontractor Agreement and required by the RFP – *i.e.*, the DES, BMS, RMS, DFC, LMS, MMC, ECV, and UAV.  At their core, all of these systems include BES's confidential and proprietary LLDs.  The LLDs for each system include complete technical and engineering documentation and information, software code and components, basic system architectures and conceptual designs, interface designs, diagrams and schematics, plans, workflow methods and protocols, and narratives and knowledge on system function, among other information.  The full LLDs created by BES are not simply deliverables contemplated by the RFP for the Lahore Project under the Subcontractor Agreement between Huawei-Pakistan and BES, but include BES's valuable trade secrets at the core of BES's business.

21.     In June of 2016, and with ongoing development by BES of the eight systems well underway, BES received for the first time an email from **Andy Queguoji, a Huawei-China employee based at a Huawei Research and Development Center in Suzhou, China.**  Ex. 1 (annotated).  Mr. Queguoji demanded that BES immediately send its then-existing LLDs for all eight systems to China for testing by Huawei.  *Id*. BES, however, had never discussed or agreed with Huawei to send its proprietary LLDs to a facility in China for testing.  Although the confidentiality provisions in BES's agreements with Huawei were written to protect such materials and information, BES was concerned about installing in China the software systems developed for the Lahore

Project, even if only for testing purposes.  BES appealed to its local contact at **Huawei-Pakistan, Managing Director Jeffrey Chenfeng**.  Mr. Chenfeng indicated that the "order" was coming directly from the Board of Directors at Huawei-China and threatened to terminate all agreements between the parties if BES did not immediately comply with Huawei-China's demands.

22.     BES agreed to provide access in accordance with Huawei's demands, but only after securing additional affirmative representations from Huawei's Board of Directors, via Mr. Chenfeng, that Huawei would return the LLDs to BES after testing was complete.  BES then sent the LLDs for seven of the eight systems to Huawei-China via electronic mail.  For the eighth and largest system, the DES system, Mr. Chenfeng demanded that BES download the DES file to an external disk, provided by Mr. Chenfeng, for shipment to Huawei's laboratory in China, which BES did.  The parties' agreements bound Huawei to protect BES's LLDs with the same level of confidentiality as Huawei would its own confidential information.

23.     As a further condition for providing the LLDs to Huawei, BES required that BES have virtual access to the laboratory in China to oversee both the installation of the systems for testing, as well as the uninstallation of the systems after testing was complete.  Huawei agreed, and provided BES with virtual access to Huawei's laboratory in China.  In October of 2016, **Chen Deng, a Huawei-China employee based in the laboratory in Suzhou, China**, informed BES that BES's DES system had been successfully deployed in China. Ex. 2; Ex. 3 (highlighted).  After testing was complete, however, Huawei revoked BES's access to the laboratory in China, without explanation.  On August 11, 2018, BES terminated Huawei's authorization to use any of these proprietary systems and demanded their return.  As of the filing of this complaint, Huawei-China has yet to return BES's LLDs for the eight systems, or allow BES to uninstall any software, including the DES system, from Huawei's facility in China.

//

//

<u>Huawei Uses BES's DES System to Create a Backdoor and Obtain Data Important to Pakistan's National Security and to Spy on Pakistani Citizens</u>

24.     As discussed above, the DES acts as a data aggregator, in which sensitive data from different sources and government agencies can be collected as part of the Lahore Safe City project and analyzed in one place to facilitate law enforcement investigations.  The data stored in the DES in connection with the Lahore Project includes data from Pakistan's Criminal Record Management System, FIR & Police Station Record Management System, Criminal Record Management System, Stolen & Recovered Vehicle Management System, Foreigner Registration System, Crime Diary & Reporting System, NADRA Database, FBR Database, Customs (Import/Export) Database, Excise and Taxation Departments, Vehicle Fitness Certification Data, Stolen Vehicles Data, Stolen Property Data, and Punjab Forensics.  This information comprises sensitive Pakistani national intelligence data.

25.     At all relevant times, the agreement and understanding between the parties was that the location of the DES would be in the PPIC3 Center in Lahore, for direct use by the Punjab Police at PPIC3.  In March of 2017, after BES installed the DES in Lahore, BES was informed that two high-ranking Huawei-China officials had traveled unannounced to Pakistan, specifically **Vice President Edward Zhang based in Shenzhen, China, and Director Corrine Lin, based in Dubai**, and demanded to meet with BES.  Ex. 4.  The two Huawei-China officials, accompanied by Mr. Chenfeng of Huawei-Pakistan, demanded that BES set up a *duplicate* DES environment in Huawei's laboratory in China, this time not merely for testing purposes but with full access to data at the Lahore Safe City project.

26.     BES refused to install the duplicate DES environment without written approval from PPIC3.  Specifically, BES raised its concerns to Huawei regarding the implications to Pakistani national security of allowing Huawei-China a "backdoor" that could be used to export to China highly sensitive data of importance to Pakistan's national security.  Ex. 5.  Initially, Huawei-Pakistan responded by reiterating its

demands.  BES again refused and Huawei threatened to withhold payments owed to BES.  BES demanded that the Managing Director of the Lahore Safe City Project get approval from the Pakistan government (PPIC3) to confirm that the government had no objection to the "transfer of this technology (DES) outside of PPIC3 for security reasons."  *Id*.  Huawei then indicated that approval from the Pakistani government was not necessary.  Ex. 6 (highlighted).  Later, Huawei-China and Huawei-Pakistan indicated that they had received approval from the Pakistani government.  Huawei threatened to terminate the agreements between the parties and withhold all payments owed to BES unless BES installed the duplicate DES system in China.  In light of Huawei's affirmative representations that they had the approval of the Pakistani government, the duplicate DES system was installed in China.  On information and belief, Huawei-China uses the proprietary DES system as a backdoor from China into Lahore to gain access, manipulate, and extract sensitive data important to Pakistan's national security.

27.     Huawei was also exposed by the BBC for having installed an *additional* covert backdoor to monitor Pakistan citizens using Wi-Fi chips installed in the cabinet housings of the CCTV security system in Pakistan.  *See* https://www.bbc.com/news/technology-47856098 (visited August 11, 2021).

Huawei Cuts Out BES and Provides BES's Proprietary LLDs to Third-Party Vendors

28.     Throughout 2016 and into 2017, BES engineers continued to develop and prepare for implementation of the eight systems for the Lahore Project.  This included working with technology vendors to ensure top-to-bottom integrated system compatibility and internal compliance for each system.

29.     In May of 2017, however, BES received a notification from Huawei that "[t]he clients [*i.e.*, PSCA and PPIC3] were [allegedly] not satisfied with BES proposal of these five systems (RMS/LMS/BMS/[UAV]/ECV), so clients wanted to either do these systems themselves or bought these systems from other vendors."  Ex. 7.  Huawei took these five proprietary systems from BES and implemented them on their own or

disclosed and shopped them to other vendors, including those identified by BES.  BES later learned that while the BMS, UAV, and ECV systems were implemented in the Lahore Project, Huawei had convinced the PSCA and PPIC3 that two of these systems, *i.e.*, the RMS and LMS, should be "de-scoped" and not implemented, despite Huawei having received payment for these systems.

30.     Huawei had specifically contracted with BES to develop, and BES did develop and deliver, these five systems for the Lahore Project.  Despite Huawei having not yet paid BES for delivery of these five systems, Huawei-China nonetheless maintains possession of all aspects of these five systems from BES, including the full, proprietary LLDs.  As discussed further below, on information and belief, Huawei has used or will use these systems in projects apart from the Lahore Project.

BES Sends Cease and Desist Letter to Huawei

31.     Huawei-China and Huawei-Pakistan agreed to in-person meetings on April 7 and April 9, 2018 at Huawei's offices in Pakistan to discuss Huawei's payment under the parties' agreements for use of BES's proprietary technology, trade secrets, and other intellectual property.  Huawei ended the second meeting abruptly, and indicated a preference to resolve the parties' dispute through legal proceedings.  That same day, BES sent an Arbitration Notice to the management of Huawei seeking, among things, resolution of the open issues between BES and Huawei relating to the parties' agreements.  Ex. 8 (highlighted).

32.     Huawei's posture shifted.  Over the next two months, Huawei exhibited a desire to resolve the parties' disputes informally and to move the business relationship forward.  Ex. 9 (email from **Huawei-Pakistan Project Director Job Liwen**: "for sure we are willing to have more discussion with [BES's CEO] Mr. Javed to manage the thing in better way").  As a gesture of good faith, BES agreed to forestall formal legal proceedings to pursue further discussions with Huawei.  Huawei's apparent willingness to work together with BES to resolve these issues amicably, however, was short-lived.  Following another in-person meeting between representatives from BES and Huawei,

on May 29, 2018, Mr. Liwen sent an email regarding Huawei's use of BES's LLDs for the five systems for which Huawei refused to remit payment. Mr. Liwen once again alleged that the PSCA did not use BES's five systems and suggested that Huawei is therefore not obligated to compensate BES for those systems, contrary to the parties' agreement. He also admitted to sending documents and "the solution," *i.e.* systems, to "others" but claimed that what Huawei sent to "others" was different from BES's systems:

> [I]n regards to Intellectual Property and Proprietary/Confidential Information, [BES's claim] makes no sense as I already find all the emails and document that 5 systems out of 8 all have official email from PSCA or BES to use other solution, all the RFP/document we sent to others is from the PSCA original RFP and the solution including LLD is also totally different with YOURS.

Ex. 10. Notably, Huawei never produced these "official email[s]" to BES or provided any additional information to support these statements, despite BES requesting that the emails be provided.

33.     On August 11, 2018, BES sent Huawei-China and Huawei-Pakistan a formal cease and desist letter revoking any and all prior authorizations for Huawei to possess or use BES's confidential and proprietary information, and demanded compensation owed to BES. Ex. 11. In its letter, BES made clear that "Huawei is not authorized to continue using BES' Intellectual Property and Proprietary Information and continuation of such use will be considered an illegal act by Huawei." *Id.*

34.     Huawei and BES each also filed petitions for arbitration before the Senior Civil Judge in Islamabad, Pakistan, on September 27, 2018 and September 10, 2020, respectively. By its petition, Huawei sought and obtained an injunction precluding BES from terminating the parties' agreements, despite BES never expressing an intent to do so. Ex. 12. BES's petition for arbitration in Pakistan seeks an award of damages arising out of Huawei's breach of the parties' agreements, which differ from BES claims of

1  trade secret theft and misappropriation, and unfair business practices that are subject of
2  this action.

3               Huawei Uses BES's Trade Secret LLDs in Other Safe City Projects

4       35.     On information and belief, Huawei used and continues to use BES's trade
5  secrets and other intellectual property, including the LLDs for the eight systems
6  developed by BES, in other Safe City projects in Pakistan and around the world.

7       36.     For example, the Punjab Government announced that safe cities would be
8  deployed in multiple additional cities, including Kasur (the "Kasur Project").   Ex. 13.
9  The Kasur Project was not subject to the same formal RFP and bidding process used for
10 Lahore.  Instead, the project was awarded to Huawei without a formal public
11 announcement, and Huawei began work on the project discreetly.  On information and
12 belief, Huawei used BES's trade secrets, including its LLDs, obtained during the Lahore
13 Project as part of the Kasur Project.  In October of 2018, when BES discovered that
14 Huawei was working on the Kasur project, BES approached Mr. Chenfeng.  Mr.
15 Chenfeng admitted to BES that Huawei had been awarded the Kasur Project, and
16 initially implied that the lack of payment was an oversight.  He told BES to submit
17 invoices to Huawei and BES did so.  Ex. 14 (invoice under Consulting Agreement); Ex.
18 15 (invoice under Subcontractor Agreement).  Huawei, however, never paid the
19 invoices and later reversed on its position that payments were required under the parties'
20 agreements.  Ex.16 (highlighted).

21      37.     According to news reports and the PSCA website, work has started or will
22 start on a Safe City project in the City of Bahawalpur (the "Bahawalpur Project").  *See*,
23 *e.g.*, https://psca.gop.pk/projects/bahawalpur/ and https://pakobserver.net/2020-buzdar-
24 govt-on-path-of-public-facilitation/ (both visited August 11, 2021).   On information
25 and belief, Huawei has used and will continue to use BES's trade secrets, including its
26 LLDs, obtained during the Lahore Project as part of the Bahawalpur Project.

27      38.     According to news reports and the PSCA website, work has started or will
28 start on a Safe City project in the City of Rawalpindi (the "Rawalpindi Project").  *See*,

*e.g.*, https://psca.gop.pk/projects/rawalpindi/ and https://pakobserver.net/2020-buzdar-govt-on-path-of-public-facilitation/ (both visited August 11, 2021).  On information and belief, Huawei has used and will continue to use BES's trade secrets, including its LLDs, obtained during the Lahore Project as part of the Rawalpindi Project.

39.   According to news reports and the PSCA website, work has started or will start on a Safe City project in the City of Multan (the "Multan Project").  *See*, *e.g.*, https://psca.gop.pk/projects/multan/ and https://pakobserver.net/2020-buzdar-govt-on-path-of-public-facilitation/ (both visited August 11, 2021).  On information and belief, Huawei has used and will continue to use BES's trade secrets, including its LLDs, obtained during the Lahore Project as part of the Multan Project.

40.   According to news reports and the PSCA website, work has started or will start on a Safe City project in the City of Faisalabad (the "Faisalabad Project").  *See*, *e.g.*, https://psca.gop.pk/projects/faisalabad/ and https://pakobserver.net/2020-buzdar-govt-on-path-of-public-facilitation/ (both visited August 11, 2021).  On information and belief, Huawei has used and will continue to use BES's trade secrets, including its LLDs, obtained during the Lahore Project as part of the Faisalabad Project.

41.   According to news reports and the PSCA website, work has started or will start on a Safe City project in the City of Gujranwala (the "Gujranwala Project").  *See*, *e.g.*, https://psca.gop.pk/projects/gujranwala/ and https://pakobserver.net/2020-buzdar-govt-on-path-of-public-facilitation/ (both visited August 11, 2021).  On information and belief, Huawei has used and will continue to use BES's trade secrets, including its LLDs, obtained during the Lahore Project as part of the Gujranwala Project.

42.   According to news reports, a Safe City project in the City of Dera Ghazi Khan (the "Dera Ghazi Khan Project") was made operational.  *See*, *e.g.*, https://www.thenews.com.pk/print/861431-smart-city-project-made-operational-in-dg-khan and https://pakobserver.net/2020-buzdar-govt-on-path-of-public-facilitation/ (both visited August 11, 2021).  On information and belief, Huawei has used and will

continue to use BES's trade secrets, including its LLDs, obtained during the Lahore Project as part of the Dera Ghazi Khan Project.

43.     According to news reports, work has started or will start on a Safe City project in the City of Karachi, which is the largest city in Pakistan (the "Karachi Project").  *See*, *e.g.*, https://www.dawn.com/news/1618678/rs30bn-sanctioned-for-karachi-safe-city-plan-to-be-launched-next-fiscal-year (visited August 11, 2021).  On information and belief, Huawei has used and will continue to use BES's trade secrets, including its LLDs, obtained during the Lahore Project as part of the Karachi Project.

44.     On information and belief, Huawei has pursued additional Safe City contracts outside of Pakistan.  On information and belief, Huawei has used and will continue to use BES's trade secrets, including its LLDs, obtained during the Lahore Project, in Safe City projects outside of Pakistan, including in Qatar, Dubai, the United Arab Emirates, and Saudi Arabia.  *See*, *e.g.*, https://www.thepeninsulaqatar.com/article/05/05/2021/UDC,-Huawei-sign-MoU-to-deploy-smart-city-solutions (visited August 11, 2021).  None of the agreements between the parties contemplate or allow for the use of BES's trade secrets for any Safe City project outside of Pakistan.

## COUNT I:
## Misappropriation of Trade Secrets Under 18 U.S.C. § 1836,
## the Defend Trade Secrets Act ("DTSA")

45.     BES repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

46.     BES owns trade secrets, which include confidential and proprietary LLDs for each of the eight systems listed and described above.  These trade secrets include complete technical and engineering documentation and information, software code and components, basic system architectures and conceptual designs, interface designs, diagrams and schematics, plans, workflow methods and protocols, and narratives and knowledge on system function, among other information, for each of the eight systems

described above.  The full LLDs comprise BES's valuable intellectual property and trade secrets at the core of BES's business.

47.    These trade secrets derive independent economic value from not being generally known to the public.  For example, Huawei partnered with BES for the Lahore Project specifically because BES's trade secrets, *e.g.*, the LLDs, were not generally known to the public.  BES makes a significant effort to maintain the secrecy of its trade secrets, and takes reasonable measures to keep its information secret.

48.    Huawei separately and distinctly misappropriated BES's trade secrets when (1) Huawei continued to use BES's trade secrets, including the LLDs, after BES demanded that Huawei cease and desist its use of BES's trade secrets; (2) Huawei used BES's trade secrets, including the LLDs, in other Safe City projects in Pakistan, including in Kasur, Bahawalpur Rawalpindi, Multan, Faisalabad, Gujranwala, Dera Ghazi Khan and/or Karachi; (3) Huawei used BES's trade secrets, including the LLDs, in other Safe City projects outside of Pakistan.

49.    Huawei knew or had reason to know that their knowledge of BES's trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy and/or limit the use of the trade secrets.  Specifically, Huawei knew that the contractual relationship between Huawei and BES, which was limited to the Lahore Project and certain future projects in Pakistan, gave rise to a duty to maintain the secrecy of BES's trade secrets and/or limit their use to the Lahore Project and certain future projects in Pakistan.  Huawei-China also knew or had reason to know that their knowledge of BES's trade secrets was derived from or through Huawei-Pakistan's contractual relationship with BES, and that Huawei-Pakistan owed a duty to BES to maintain the secrecy of the trade secrets and/or limit the use of BES's trade secrets to the Lahore Project and certain future projects in Pakistan.

50.    Huawei's misappropriation of BES's trade secrets has harmed BES.  These trade secrets comprise BES's commercially valuable intellectual property and include proprietary information at the core of BES's business.  BES has incurred substantial

losses and costs as a proximate result of Huawei's misappropriation of BES trade secrets, including loss of revenue from the Lahore Project and other Safe City projects, and BES is entitled to damages, including but not limited to loss of the economic value BES derives from exclusive use of its proprietary technology, and legal and investigation costs.

51.     In addition to damages, BES is entitled to injunctive relief enjoining Huawei from continued misappropriation of BES technology.  If the Court determines that it would be unreasonable to prohibit Huawei's future use of BES's technology, such future use should be conditioned upon payment of a royalty to BES.

52.     Huawei's misappropriation of BES's trade secrets is willful and malicious, because Huawei continues to use BES's trade secrets, including BES's LLDs, all while refusing to provide payment to BES, after BES demanded Huawei cease and desist from use of BES's technology.

<u>**COUNT II:**</u>

<u>**Misappropriation of Trade Secrets Under California Civil Code § 3426, the**</u>
<u>**California Uniform Trade Secrets Act (CUTSA)**</u>

53.     BES repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

54.     BES owns trade secrets, which include confidential and proprietary LLDs for each of the eight systems listed and described above.  These trade secrets include complete technical and engineering documentation and information, software code and components, basic system architectures and conceptual designs, interface designs, diagrams and schematics, plans, workflow methods and protocols, and narratives and knowledge on system function, among other information, for each of the eight systems described above.  The full LLDs comprise BES's valuable intellectual property and trade secrets at the core of BES's business.

55.     These trade secrets derive independent economic value from not being generally known to the public.  For example, Huawei partnered with BES for the Lahore

Project specifically because BES's trade secrets, *e.g.*, the LLDs, were not generally known to the public.  BES makes a significant effort to maintain the secrecy of its trade secrets, and takes reasonable measures to keep its information secret.

56.     Huawei separately and distinctly misappropriated BES's trade secrets when (1) Huawei continued to use BES's trade secrets, including the LLDs, after BES demanded that Huawei cease and desist its use of BES's trade secrets; (2) Huawei used BES's trade secrets, including the LLDs, in other Safe City projects in Pakistan, including in Kasur, Bahawalpur Rawalpindi, Multan, Faisalabad, Gujranwala, Dera Ghazi Khan and/or Karachi; (3) Huawei used BES's trade secrets, including the LLDs, in other Safe City projects outside of Pakistan.

57.     Huawei knew or had reason to know that their knowledge of BES's trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy and/or limit the use of the trade secrets.  Specifically, Huawei knew that the contractual relationship between Huawei and BES, which was limited to the Lahore Project and certain future projects in Pakistan, gave rise to a duty to maintain the secrecy of BES's trade secrets and/or limit their use to the Lahore Project and certain future projects in Pakistan.  Huawei-China also knew or had reason to know that their knowledge of BES's trade secrets was derived from or through Huawei-Pakistan's contractual relationship with BES, and that Huawei-Pakistan owed a duty to BES to maintain the secrecy of the trade secrets and/or limit the use of BES's trade secrets to the Lahore Project and certain future projects in Pakistan.

58.     Huawei's misappropriation of BES's trade secrets has harmed BES.  These trade secrets comprise BES's commercially valuable intellectual property and include proprietary information at the core of BES's business.  BES has incurred substantial losses and costs as a proximate result of Huawei's misappropriation of BES trade secrets, including loss of revenue from the Lahore Project and other Safe City projects, and BES is entitled to damages, including but not limited to loss of the economic value

BES derives from exclusive use of its proprietary technology, and legal and investigation costs.

59.     In addition to damages, BES is entitled to injunctive relief enjoining Huawei from continued misappropriation of BES technology.  If the Court determines that it would be unreasonable to prohibit Huawei's future use of BES's technology, such future use should be conditioned upon payment of a royalty to BES.

60.     Huawei's misappropriation of BES's trade secrets is willful and malicious, because Huawei continues to use BES's trade secrets, including BES's LLDs, all while refusing to provide payment to BES, after BES demanded Huawei cease and desist from use of BES's technology.

## COUNT III:

## Unfair Competition Under California Business and

## Professions Code § 17200 et seq.

61.     BES repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

62.     Huawei engaged and continues to engage in unlawful, unfair, and/or fraudulent business acts and practices.  Such acts and practices include, but are not limited to, misappropriating BES's trade secrets and other intellectual property, including those that were a part of the proprietary LLDs that Huawei obtained from BES.

63.     Huawei's business acts and practices were unfair in that the substantial harm suffered by BES outweighs any justification that Huawei may have for engaging in those acts and practices.  For example, Huawei's practice of withholding payment to BES and threatening to terminate the contract constitutes unfair business acts and practices.

64.     Huawei's business acts and practices were and are unlawful as described in the preceding paragraphs.

65.     Huawei's business acts and practices were fraudulent in that a reasonable person would likely be deceived by their material misrepresentations and omissions. Specifically, Huawei implemented a fraudulent scheme in which they systematically acquired BES's trade secrets and confidential information through repeated material misrepresentations and omissions as well as coercion, with the goal of using BES's trade secrets in certain future Safe City projects beyond the parties' agreements.  For example, Huawei entered into a contract agreement with BES for the Lahore project, without intending to honor the terms of the contract, including but not limited to payments to which BES is entitled and the limits on the use and disclosure of BES's trade secrets.

66.     Upon information and belief, Huawei continues to use BES's trade secrets unlawfully including, for example, using BES's trade secret and proprietary LLDs in other Safe City projects in Pakistan, including Kasur, Bahawalpur, Rawalpindi, Multan, Faisalabad, Gujranwala, Dera Ghazi Khan, and/or Karachi.

67.     Upon information and belief, Huawei continues to use BES's trade secrets unlawfully including, for example, using BES's trade secret and proprietary LLDs in pursuing other Safe City projects outside of Pakistan, including in Qatar, Dubai, the United Arab Emirates, and Saudi Arabia.

68.     BES has been harmed as a result of Huawei's unlawful, unfair, and fraudulent business acts and practices.  BES has incurred substantial losses and costs as a proximate result of Huawei's unlawful, unfair, and fraudulent business acts and practices, and BES is entitled to damages, including but not limited to loss of the economic value BES derives from exclusive use of its proprietary technology, damages owed to BES due to Huawei's continued use of BES technology, and legal and investigation costs.

69.     In addition to damages, BES is entitled to permanent injunctive relief enjoining Huawei's continued misappropriation and use of BES technology.  The relief

should also include specific performance that requires Huawei to return of all of BES's intellectual property and technology, including the LLDs.

70.     But for Huawei's unlawful, unfair, and deceptive practices, BES would not have suffered these injuries.

## **PRAYER FOR RELIEF**

WHEREFORE, BES prays for judgment as follows:

A.     On the First Cause of Action, damages in the amount of BES's actual losses and Huawei's unjust enrichment; exemplary and punitive damages amounting to twice the sum of actual losses and unjust enrichment for willful and malicious misappropriation; injunctive relief enjoining Huawei from continued misappropriation of BES's trade secrets, including LLDs, or a reasonable royalty; and specific performance requiring Huawei to return all of BES's proprietary information, including the LLDs, and destroying any copies made by, for, or on behalf of Huawei;

B.     On the Second Cause of Action, damages in the amount of BES's actual losses and Huawei's unjust enrichment; exemplary and punitive damages amounting to twice the sum of actual losses and unjust enrichment for willful and malicious misappropriation; and injunctive relief enjoining Huawei from continued misappropriation of BES's trade secrets, including LLDs, or a reasonable royalty; and specific performance requiring Huawei to return all of BES's proprietary information, including the LLDs, and destroying any copies made by, for, or on behalf of Huawei;

C.     On the Third Cause of Action, damages in the amount of BES's actual losses and Huawei's unjust enrichment; injunctive relief enjoining Huawei from continued misappropriation of BES's trade secrets, including LLDs, or a reasonable royalty; and specific performance requiring Huawei to return all of BES's proprietary information, including the LLDs, and destroying any copies made by, for, or on behalf of Huawei;

D.     For reasonable attorney fees and costs;

E.     For pre-judgment interest on all damages; and

F.      For such other relief as the Court deems just and proper.

Dated:  August 11, 2021                     AKIN GUMP STRAUSS HAUER & FELD LLP

By_____
          Paul D. Tripodi II

Attorneys for Plaintiff
Business Efficiency Solutions, LLC

1

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff BES hereby demands a trial by jury.


Dated:  August 11, 2021                    AKIN GUMP STRAUSS HAUER & FELD LLP


By_____
           Paul D. Tripodi II

Attorneys for Plaintiff
Business Efficiency Solutions, LLC